**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **MARKKU TORYALAI HART** | * |
| | * |
| **Petitioner,** | * |
| | * |
| | * |
| | *   **Case No.: 19-cv-02601-GJH** |
| **SALLY BELCO ANDERSON** | * |
| | * |
| **Respondent.** | * |
| | * |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**RESPONDENT'S MOTION TO DISMISS AND VERIFIED ANSWER TO VERIFIED PETITION FOR RETURN OF CHILDREN TO FRANCE AND ISSUANCE OF SHOW CAUSE ORDER**</u>

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act 22 U.S.C 9001 *et seq*.**

To the Honorable, the Judge of Said Court:

Sally B. Anderson ("Respondent"), by her counsel, Lorenzo Randle, Esquire, hereby submits her Motion to Dismiss and Answer to Petitioner Markku Toryalai Hart's ("Petitioner") so-called Verified Petition for Return of Children to France and Issuance of Show Cause Order, ("Petition for Return to France") filed on September 6, 2019, pursuant to The Convention on the Civil Aspects of International Child Abduction (1980) as codified in ICARA §11601-11610, and respectfully states as follows:

<u>**JURISDICTION AND PERTINENT LAW**</u>

Respondent files this pleading as a Motion to Dismiss pursuant to FRCP Rule 12(b)(1) and 12(b)(6) and as a verified answer to Petitioner's verified petition. This motion is based on the fact that France was not the "habitual residence" of the children on July 16, 2019. The Philippines was the habitual residence of the children. Further, the Petitioner's petition seeks a return to France, not the Philippines. Given that the Philippines, not France was the "habitual residence" the children

cannot be returned to France.

Accordingly, the Petitioner fails to state a claim upon which relief can be granted and the Court lacks subject matter jurisdiction because the case cannot be brought based on the Hague Convention as a judicial proceeding.

Respondent avers that she, the Petitioner and children were residents of the Philippines on July 16, 2019. The parties were on vacation at the Petitioner's Mother's vacation home when Petitioner violently assaulted Respondent on July 14, 2019 which caused her to flee with the children for safety to the United States. The family had been living in Boracay, Malay, Philippines since August 20, 2018 to July 28, 2019. The children had attended the Boracay European International School from August 28, 2018 to July 16, 2019 for kindergarten and 1st grade and was scheduled to continue their education commencing August 2019. The Respondent had in May 2019 accepted a part-time teaching position with the Boracay European International School in the Philippines to start August 2019. The parties had also singed a renewable lease for their apartment in January 2019 to December 2019. It was only after the July 14, 2019 assault that Respondent rejected her part-time position and abandoned her residence in the Philippines for the safety of her family in the United States. Respondent was afraid to return to the Philippines and their apartment because that was the place of a prior violent drunken assault of the Respondent in 2019 while the children were in the next room.

The facts will show that the eldest child spent s of her 7.5 years in France and the youngest spent 2 of her 5 years there, but their most recent 10 months were spent in the Philippines. This was the last shared interest of the parents.

Petitioner is form shopping by attempting to manipulate occasional vacations to France

into a habitual residence. When the record will show the family travelled and lived in a number of

places. Petitioner misled the court to believe France is the habitual residence of the children

instead of the Philippines because of the custody laws of the Philippines favor the mother.

Article 213 of the Family Code of the Philippines provides that, "In case of separation of the

parents, parental authority shall be exercised by the parent designated by the Court. The Court

shall take into account all relevant considerations, especially the choice of the child over seven

years of age, unless the parent chosen is unfit. No child under seven years of age shall be separated

from the mother, unless the court finds compelling reasons to order otherwise." Article 213 takes

its bearing from Article 363 of the Civil Code, which reads:

> "Art. 363. In all questions on the care, custody, education and property of
> children, the latter's welfare shall be paramount. No mother shall be separated from
> her child under seven years of age, unless the court finds compelling reasons for
> such measure."

While the rule mandating sole custody of a child to a mother (except in exceptional cases)

ends when the child is seven, the strong bias in favor of the mother continues after that age.

The definition of habitual residence is a question of fact and the 4th Circuit splits with the

other Circuits on the definition. The Court in *Miller v. Miller, 240 F. 3d 392 (4th Cir. 2001)* held

that the question of habitual residence is a fact specific inquiry that should be made on a

case-by-case basis and that there is no distinction between ordinary residence and habitual

residence. See Miller 240 F. 3d at 400:

> "The Hague Convention does not define "habitual residence." However, in
> ascertaining how to make this determination, we are guided by the precedent of our
> sister circuits in concluding that "there is no real distinction between ordinary
> residence and habitual residence." Friedrich I, 983 F.2d at 1401 (citing In re Bates,
> No. CA 122.89, High Court of Justice, Family Div'n Ct. Royal Court of Justice,
> United Kingdom (1989)); accord Rydder v. Rydder, 49 F.3d 369, 373 (8th Cir.

3

1995). As the Sixth Circuit explained: "A person can have only one habitual residence. On its face, habitual residence pertains to customary residence prior to the removal. The court must look back in time, not forward. " Friedrich I, 983 F.2d at 1401. This is a fact specific inquiry that should be made on a case-by-case basis. See id. (citing Bates)."

Here the ordinary residence is the Philippines. Since the Philippines is the habitual residence of the children, the question is whether the children should be returned to the Philippines. The answer is no for two reasons. First, the parties both abandoned the Philippines as their habitual residence. Petitioner's request is to return the children to France and Respondent fled to the United States with the children and enrolled them in school in Maryland. Second, the United States has not accepted the Philippines accession to the Hague Convention and under Articles 38[1] and 39[2] of the Convention until the instrument of accession is accepted by the contracting state, which here is the United States, the acceding State is not a party to the Convention.

On the issue of access claims regarding minor children, the Fourth Circuit in *Cantor v. Cohen, 442 F. 3d 196 (2006)* held that the District Court did not have jurisdiction to hear access claims under ICARA. In support of its positions that rights of custody and access may not be decided by Federal court its analysis was set out in detail at 442 F.3d at 199[3].   The Court also

---

1 HCCH-Article 38-Any other State may accede to the Convention. The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands. The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession. The accession will have effect only as regard the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.
2 HCCH-Article 39-Any State may at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State. Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
3 "To resolve the issue presented in this appeal we find that we must begin by looking at the implementing language in ICARA, 42 U.S.C. §  11601, et seq.   We believe the analysis does not begin at 42 U.S.C. §  11603, as suggested by the Appellant, but instead at 42 U.S.C. §  11601.   In the initial findings under §  11601(a) particular emphasis is

found in Cantor that the Petitioner had a remedy in a State court on the issue of child custody and

access.

## DEFENSES

1.     Respondent has not breached a custody right under Article 3 of the Convention in that

the minor children's habitual residence is the Philippines, where the parties had resided

for almost a year prior to their vacation to France which commenced on July 3, 2019.

*See Res. Ex. 1, Lease from January 1, 2019 through December 31, 2019, in the*

*Philippines*; *See also Res. Ex. 2, Email exchange where Boracay European*

*International School offered Respondent a job* and *See Res. Ex. 3, Respondent*

*Memorandum of Understanding for the 2019-2020 School Year at the Boracay*

---

drawn to Congressional concern regarding international abduction or wrongful retention of children.   Notably, this section does not mention visitation rights or access rights until the last subsection, subsection 4, and then only mentions these rights in the context of the Convention.   Specifically, the subsection describes that "[t]he Convention. establishes legal rights and procedures for the prompt return of the children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights."   42 U.S.C. §  11601(a)(4) (emphasis added). Furthermore, subsection (b)(1) of §  11601, which is part of Congress' declarations, states that "[i]t is the purpose of this chapter to establish procedures for the implementation of the Convention in the United States."   42 U.S.C. § 11601(b)(1) (emphasis added).   More importantly, subsection (b)(4) of §  11601, which is also part of Congress' declarations, states that:
[t]he Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.
42 U.S.C. §  11601(b)(4) (emphasis added)...."
Article 21 states that an application may be presented to the Central Authorities for securing the effective exercise of access rights.   The Central Authority in the United States is the Department of State.3   Notably, Article 21 of the Convention does not provide for presentation to a judicial authority.4   This is in sharp contrast to Article 12 of the Convention, which addresses wrongful removal or return claims, and specifically refers to the initiation of judicial proceedings and grants judicial authority to provide expedited relief in the case of the wrongful removal or retention of children.5
It is in that context that we find that 42 U.S.C. §  11603 must be read, which provides in subsection (b) that:
[a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.
42 U.S.C. §  11603(b) (emphasis added).
As noted above, under the Convention, the Appellant has no right to initiate judicial proceedings for access claims and the federal courts are not authorized to exercise jurisdiction over the access claims brought by the Appellant.   It is on this premise that we find, and the district court found, that the courts of the United States lack a substantive basis for the resolution of the access claims asserted by the Appellant.

*European International School* (noting the offer was in April 2019 for a teaching

position to start August 15, 2019 and continue through December 2019); *See also Res.*

*Ex. 4, Respondent's email, retraction of her Acceptance after enduring abuse by the*

*Petitioner (July 21, 2019)*. The minor children were not habitual residents of France as

alleged by Petitioner, but residence of The Philippines.   Because Petitioner failed to

identify the appropriate habitual residence, Petitioner's petition for return to France

must be dismissed.

2.     Respondent has not breached a custody right under Article 3 of the Convention in that

pursuant to Article 13(a) of the Convention, the Petitioner was not exercising rights of

custody or access at the time of Respondent's flight for safety to the United States.

3.     While at Petitioner's Mother's vacation home in France on July 14, 2019 during the

violent assault of Respondent, Petitioner repeatedly told Respondent "just go, just

leave".   Respondent had previously told Petitioner during other arguments that she

would never leave him without take the children with her on July 14, 2019. Petitioner

repeatedly demanded that Respondent leave the Petitioner's Mother's vacation home in

France where they were merely visiting for part of the summer. Petitioner demanded

and thus consented to Respondent's departure with and retention of their minor

children.

4.     Pursuant to Convention Article 20 the return of the child under the provisions of Article

12 may be refused if this would not be permitted by the fundamental principles of the

requested State relating to the protection of human rights and fundamental freedoms.

Here France clearly is not the habitual residence of the children, it was the Philippines

during the time the family was on vacation at the Petitioner's Mother's vacation home in France on July 14-16, 2019. The children cannot be returned to France. While the Philippines was the habitual residence of the children based on their prior shared intent of the parents to return there to live, work and continue the children in school, the Philippines as a residence has now been abandoned.

5.     Pursuant to Convention Article 13(b), there is a grave risk that the return of the children to Petitioner's care in France would expose them to physical or psychological harm or otherwise place the children in an intolerable situation. While in France, on vacation at the vacation home owned by the Petitioner's Mother, the Petitioner violently physically assaulted Respondent. This violent assault occurred on July 14, 2019, Bastille Day in France. Petitioner while stumbling drunk from drinking wine and "Pastis" a flavored spirit of at least 40 % proof alcohol, attacked Respondent in the patio and street area of the vacation home. Petitioner was so drunk he forgot that he agreed Respondent and the children would go down the road to watch the firework display and he would come later. He texted Respondent and their friend about the children. He accused the Respondent of stealing the children from him and after she returned to take him to the fireworks display to be with the family, he attacked her. Petitioner struck Respondent, pulled her hair out and pushed her against the glass portion of the patio door to the house, shattering it, As a result of the incident Respondent suffered cuts and bruises from the assault (the details of which Petitioner has claimed he cannot recall because he suffered an alcoholic blackout regarding this incident). Respondent feared for her and the minor children's safety. *See Res. Ex. 5a,*

*Text Message Exchange between Petitioner, Respondent witness and Respondent* as a

*See. Res. Ex. 5b, Photos of Respondent's Injuries as a result of the assault by Petitioner*

*on July 14, 2019.*

6.    Pursuant to Fed.R.Civ.P.44.1, Respondent hereby gives notice that she shall rely upon foreign law and that she shall present witness testimony *via* affidavit and telephone.

## ALLEGATIONS

7.    That Respondent admits the allegations of paragraph 1 of the Petition for Return to France.

8.    That Respondent admits the portion of allegations of paragraph 2 of the Petition for Return to France as to the names and date of birth of the children and their removal to Maryland but denies the remainder of paragraph 2 and demands strict proof.

9.    That Respondent denies the allegations of paragraph 3 of the Petition for Return to France that the children were wrongfully removed from their place of habitual residence and proper custody jurisdiction and demands strict proof. Respondent admits that she and the minor children fled for safety to her family in the United States on July 16, 2019.

10.    That Respondent admits the allegations of paragraphs 4 of the Petition for Return to France.

11.    The Petitioner's assertions of law in paragraph 5 of the Petition for Return to France do not require admission or denial. Respondent denies the applicability of France or French law to the instant matter as France is not the habitual residence of the minor children.   Respondent asserts that the Philippines was the minor children's habitual

residence and that parties last shared intent reflected that the Philippines was their

residence.   Respondent further asserts that the parties left belongings along with their

cats in in their leased apartment in the Philippines; the parties had engaged a cat sitter to

care for their pets during their holiday to France. Timothy and Duckie have been a

significant part of the family and the children love them.

12.     The Petitioner's assertion as to the objects of convention in paragraph 6 of the Petition

for Return to France amount to legal argument to which no admission or denial is

required.   Respondent affirmatively asserts that The Convention on the Civil Aspects

of Child Abduction ("Hague Abduction Convention") and the International Child

Abduction Remedies Act ("ICARA") which implements the Hague Abduction

Convention have numerous objectives, including protecting the safety of parents

fleeing from domestic violence with their minor children.

## JURISDICTION

13.     That Respondent denies the allegations of paragraph 7 of the Petition for Return to

France and further states that France is not the habitual residence of the children or the

parties.   Respondent further avers that this court has no jurisdiction to return the

children to France. Respondent admits the children are within the jurisdiction of this

Court in Maryland.

## FACTS

14.     That Respondent denies the allegations of paragraph 8 of the Petition for Return to

France as stated and demands strict proof.   Respondent admits that the parties were in

Usinens, Haute Savoie, France on vacation from their home in Boracay, Malay,

9

Philippines during July 2019 and that they stayed at the Petitioner's Mother's vacation home for the Bastille Day Celebration.

15.     That Respondent admits the allegations of paragraph 9 of the Petition for Return to France that the Petitioner holds dual citizenship but denies the remainder of the allegation and demands strict proof.   Respondent asserts that Petitioner can work anywhere in the world to perform his work, and the family has frequently moved for his work.

16.     That Respondent admits the allegations of paragraph 10-11 of the Petition for Return to France.   Respondent further avers that the Respondent's French residence card expired on or about 06/19/2018 *See Res. Ex. 6 Respondent's expired French Residence Card* and was not renewed because the parties were living in the Philippines pursuant to a Republic of Philippines Alien Certificate of Registration with the intent of staying there indefinitely *See Res. Ex. 7. Respondent's Philippines Alien Certificate Registration*. Respondent denies the allegation that Respondent may renew her French Residency Card (Carte de Sejour) every two years to the extent this assertion is made without condition.

17.     That Respondent admits the allegations of paragraph 12-16 of the Petition for Return to France.   Respondent affirmatively avers that the parties resided in Bamako, Mali from August 28, 2015 to January 6, 2016 and from January 22, 2016 to September 1, 2016. Respondent further affirmatively affirms that the their first daughter, A.M.A.H., was born in April 2012 in Jeffersonville, Indiana, USA, and their second daughter, E.S.A.H., was born in March 2014 in Fairfax County, Virginia, USA. See *Res. Ex. 8,*

*Birth Certificate of A.M.A.H* and *Res. Ex. 9, Birth Certificate of E.S.A.H.*

18.  That Respondent admits the portion of the allegations of paragraph 17 of the Petition for Return to France that the family traveled to France for vacation *on occasion,* not annually. Respondent denies the remainder of the allegations in paragraph 17, and demands strict proof thereof.

19.  That Respondent denies the allegations of paragraph 18 and demands strict proof.

20.  That Respondent admits to the portion of paragraph 19 that due to the political climate in Mali it was no longer safe for the family to be there; Respondent denies the allegations that the family ***ever*** made Haute Savoie their home. Respondent denies the allegations that they "returned" to France and that going to France was a joint decision of the parties, but avers she was an unemployed stay at home mother with no other choice.

21.  That Respondent admits the allegations of paragraph 20 of the Petition to Return to France in so far as the parties enrolled their eldest daughter in nursey school but denies the allegations to the extent Petitioner alleges the parties "returned" to Haute Savoie and to the extent Petitioner suggests that Haute Savoie was ***ever*** their home.

22.  Petitioner admits the allegation contained in paragraphs 21-22 of the Petition to Return to France.

23.  That Respondent denies the allegations of paragraph 23 of the Petition for Return to France as stated and further states Petitioner has never been an active and engaged parent with the children while they were in Mali, France or the Philippines and demands strict proof.

24.     That Respondent denies the allegations of paragraph 24 of the Petition for Return to

France and demands strict proof thereof.   Respondent affirmatively avers that the

family moved to the Philippines with their possession as the move was intended to be a

permanent relocation. The parties enrolled their children in the Boracay European

International School and secured a furnished renewable annual leased apartment which

was partly furnished with their belongings. Respondent affirmatively states that the

parties move to the Philippines reflects the last shared intent of the parties as to the

children's habitual residence. There was no decision or discussion between the parties

about relocating from the Philippines to France on a permanent basis.

25.     That Respondent denies the portion of paragraph 25 of the Petition for Return to France

in so far as Petition alleges that France was the parties "home" or residence.

Respondent avers that the family went to France in July 2019 for vacation just as they

did in July 15, 2015 through August 7, 2015. The shared intent of the parents was to

vacation in France and return to the Philippines in August 2019 for Respondent's new

job and so that the minor children could continue attending the Boracay European

International School.

26.     That Respondent denies the allegations of paragraph 26 of the Petition for Return to

France and demands strict proof. Respondent further states Petitioner was too drunk to

attend the Bastille Day festivities on July 14, 2019 and only Respondent, the children

and a family friend attended.

27.     That Respondent denies the allegations of paragraph 27 of the Petition for Return to

France as stated and further states that while in a drunken rage Petitioner attacked her

12

while the minor children were watching fireworks just down the road.

28. That Respondent admits the portion of the allegation in paragraph 28 of the Petition for Return to France stating she boarded a plane to the United States with the children but denies it was without Petitioner's knowledge. While screaming at her in a drunken rage on Bastille Day, Petitioner both demanded and invited her to leave, which she took to mean to go with the children to her family for safety. *Respondent will produce evidence supporting this averment during discovery*.

29. The Respondent denies the allegations in paragraph 29 of the Petition for Return to France and demands strict proof.

30. That Respondent admits the allegations contained in paragraph 30 of the Petition for Return in so far as she had been applying for jobs within the US and worldwide for years to obtain work, which the Petitioner supported. Respondent avers that Petitioner supported Respondent's search for employment because he had difficulty collecting on his work contracts; as a result, she obtained employment at the minor children's international school in the Philippines as a temporary teacher. *See Res. Ex. 2, Email exchange where Boracay European International School offered Respondent a job and Res. Ex. 10, Certificate of Admission from Boracay European International School*. Respondent avers that the family traveled frequently and a search for a new place of residence was neither unusual nor surreptitious, particularly as Petitioner increasingly engaged in "binge" drinking and remained uninvolved as a father. Respondent is without sufficient information to admit or deny what if anything Petitioner discovered on a computer used in the home and demands strict proof thereof.

13

31.     That Respondent admits the allegations in paragraph 31 of the Petition for Return to

France and further states she frequently explored possible living arrangements,

including those that would be closer to her family, and that she had done so for years

with Petitioner's full knowledge.

32.     That Respondent can neither admit nor deny what was in the mind of the Petitioner, so

he denies the allegations in paragraph 32 of the Petition for Return to France and

demands strict proof.

33.     That Respondent denies the allegations in paragraph 33 of the Petition for Return to

France and demands strict proof.

34.     Paragraph 34 of the Petition for Return to France is not an allegation requiring a

response but if so, she re-alleges all previous responses.

35.     That Respondent admits the allegations in paragraph 35 of the Petition for Return to

France in so far as the Petitioner refers vaguely to "petitioners" who file for relief under

The Hague Abduction Convention.

36.     That Respondent admits the allegations in paragraph 36.

37.     That Respondent denies the allegations in paragraph 37, demands strict proof.

Respondent affirmatively avers that the Philippines was the habitual residence of the

children 10 months prior to their summer 2019 holiday in France. Respondent avers

that the minor children were most integrated into the community they last attended

school, given their ages.   The minor children commenced elementary school and their

early childhood education in the Philippines during the children's Kindergarten and

First Grade years.   Respondent affirms that the minor children attended an

14

international school, and that Respondent was set to work as a teacher at their school this coming fall.

38.     That Respondent denies the allegations in paragraph 38-39 of the Petition for Return to France and demands strict proof.

39.     That Respondent denies the allegations in paragraph 40 of the Petition for Return to France and submits that the Philippines was the children's habitual residence on July 16, 2019.

40.     That Respondent denies the allegations in paragraph 41 of the Petition for Return to France and demands strict proof.   Respondent further avers that French law is inapplicable as the family resided for over 10 months in the Philippines prior to their visit to France, had 6 months remaining on their leased apartment where the majority of their possessions remained, and where Respondent was expected to start a teaching position commencing August 15, 2019.

41.     That Respondent does not have sufficient information to admit or deny the alleged recitations of law set forth in paragraphs 42-44 of the Petition for Return to France. Respondent intends to submit a memorandum regarding applicable foreign law. Respondent affirmatively avers that the laws of France should not apply in any regard to this matter.

42.     That Respondent admits the allegations in paragraph 45 of the Petition for Return to France.

43.     That Respondent denies the allegations of law set forth in paragraphs 46-47 of the Petition for Return to France and demands strict proof.   Respondent avers that the

laws of France are not applicable to the interpretation of the 1980 Convention as codified in the United States.

44.     That Respondent denies the allegations in paragraph 48 of the Petition for Return to France and submits France was not and is not the children's habitual residence so French law does not apply.

45.     That Respondent denies the assertion of law set forth in paragraph 49 of the Petition for Return to France and demands strict proof.

46.     Paragraph 50 of the Petition for Return to France is an assertion to which no response is required.

47.     That Respondent denies the allegations in paragraphs 51-52 of the Petition for Return to France and demands strict proof.

48.     Respondent denies the allegations in paragraph 53 of the Petition for Return to France as stated but admits the children are residing at 9523 Smithview Place, Glenarden, Maryland 20706.

49.     Paragraph 54 of the Petition for Return to France is not an allegation requiring a response but if so, she re-alleges all previous responses.

50.     That Respondent admits Petitioner invokes Article 18 of the Convention but denies the reminder of the allegation in paragraph 55 of the Petition for Return to France.

51.     That Respondent asks this Court to deny the relief Petitioner sets forth in paragraph 56 of the Petition for Return to France and demands strict proof of the evidence he intends to submit in support of this assertion.

52.     Petitioner mis-numbered his paragraph entries and thus there is no paragraph 57 of the

Petition for Return to France.

53.    That Respondent denies the allegations in paragraph 58 of the Petition for Return to France and demands strict proof.

54.    That Respondent denies the allegations in paragraph 59 as stated and affirmatively avers that Respondent has provided the Petitioner with Skype access to the children daily while Respondent choses to remain in France at his Mother's vacation home. Respondent affirmatively avers that the minor children have a close connection with the Respondent, who has been their primary caregiver their entire lives and given Petitioner's frequent unavailability because of gaming, drinking and the changes in their residences. Respondent further avers that home is ultimately where Respondent has resided with the children and Petitioner's lack of consistent involvement as a parent reflects that status quo.

55.    That Respondent denies the allegations in paragraph 60 of the Petition for Return to France and demands strict proof.

56.    That Respondent has insufficient information to admit or deny, so she denies paragraph 61 of the Petition for Return to France, and in so far as it is a legal assertion, it merits no admission or denial.

57.    Paragraph 62 of the Petition for Return to France is not an allegation requiring a response, but if so, Respondent denies.

58.    That Respondent denies the allegations in paragraph 63 of the Petition for Return to France and demands strict proof.

59.    That Respondent admits the allegations in paragraph 64 of the Petition for Return to

17

France.

60. That Respondent denies the allegations in paragraph 65 of the Petition for Return to France and demands strict proof

61. Paragraph 66 of the Petition for Return to France is not an allegation requiring a response but if so, Respondent denies.

62. That Respondent denies the accuracy Petitioner's recitation of where the minor children lived during the last five years.   Respondent Affirmatively avers that the parties resided at the following addresses since the birth of their eldest child:

   a. From July 16, 2019 to the present, the minor children reside with Respondent in Glenarden, Maryland, with Respondent's family.

   b. From August 20, 2018 through July 16, 2019, the minor children resided in Boracay, Malay, Philippines with the parties, at which time Respondent fled with the minor children for their safety.

   c. From September 1, 2016 through August 19, 2018, the minor children resided in Usinens, Haute Savoie, France with the parties.   (two years)

   d. From May 6, 2014 through September 1, 2016, the minor children resided in Bamako, Mali with the parties.   (two years)

   e. Respondent affirmatively avers that the minor children visited Respondent's family in the United States for the first two weeks of July 2015 and spent 3 weeks of vacation in August 2015 in Sri Lanka.

   f. Respondent affirmatively avers that other than the time frames provided above, the minor children only spent time in France for brief visits on holiday.

63.     That Respondent neither admits nor denies the allegations in paragraph 68 of the Petition for Return to France.

64.     That Respondent asks this Court to deny Petitioner's relief sought in paragraph 69 of the Petitioner for Return to France.   Respondent is without sufficient information to admit or deny whether Petitioner has incurred certain fees and expenses, denies the remaining factual allegations of paragraph 69, and demands strict proof.

65.     That Respondent asks that this honorable Court deny Petitioner the relief he seeks in paragraph 70 of the Petition for Return to France and demands strict proof.


**WHEREFORE**, Respondent requests that this Honorable Court:

A.  Deny Petitioner's Petition for Return on the basis that France is not the habitual residence of the minor children and that there is a grave risk of harm to the minor children if they are returned to Petitioner and to France;

B.  Award Respondent all of her attorney's fees and costs in defending against this action; and

C.  Any other appropriate relief.

## **VERIFICATION**

I, **Sally Belco Anderson**, do solemnly declare and affirm under the penalties of perjury

under the laws of the United States of America that the factual averments in the foregoing

Verified Answer to Petitioner's Verified Petition are true and correct to the best of my

knowledge, information and belief.

_____               9/27/2019

Sally Belco Anderson                    Date

Respectfully submitted by,

**RANDLE & RANDLE**
**ATTORNEYS AT LAW, LLC**

*/s/ Lorenzo Randle*
Lorenzo Randle, Esquire
Bar No. 13200
6411 Ivy Lane, Suite 202
Greenbelt, Maryland 20770
Telephone: (301) 446-2170
Facsimile:   (301) 446-2172
Email: info@lrandlelaw.com
CPF: 9206090006
*Attorney for Respondent*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 27th day of September, 2019 a copy of the foregoing *Respondent's Motion to Dismiss and Verified Answer To Verified Petition For Return Of Children To France And Issuance Of Show Cause Order* was served via CM/ECF to: Joel R. Zuckerman, Esquire, 51 Monroe Place, Suite 806, Rockville, Maryland 20850 at Zukerman@maxlaw.us.

*/s/ Lorenzo Randle*
Lorenzo Randle